UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

FATMA BEBEK, *as the putative personal representative*
*of the estate of* SALIH BEBEK,

      Plaintiff,

v.

SIMS CRANE & EQUIPMENT COMPANY,
KEYSTONE TERMINAL HOLDINGS OF FLORIDA, LLC,
KEYSTONE TERMINAL HOLDINGS, LLC,
KEYSTONE TERMINAL PROPERTIES, LLC
LOGISTEC GULF COAST, LLC,
MAPLE MARINE CO.,
FIBER MARINE SHIP MANAGEMENT & TRADING CO.,
JEFFERY MAY (*Individually*),
PATRICK WILLIAM HARDIE (*Individually*),
XYZ EMPLOYER(S), XYZ SHIPOWNER(S), and
XYZ SHIP OPERATOR(S).

      Defendants.
_____/

### WRONGFUL DEATH COMPLAINT
### AND DEMAND FOR JURY TRIAL

    **COMES NOW,** FATMA BEBEK, as the putative personal representative of the estate of

SALIH BEBEK, and sues Defendants, and alleges as follows:

### Introduction and Background

    On January 2, 2022, Salih Bebek was crushed to death by a 20,000-pound crane bucket.

At the time of his death, Mr. Bebek was working as a Bosun aboard the M/V *Maple*. The M/V

*Maple* is a large cargo ship that regularly carries loads of raw materials between Turkey and

Jacksonville, Florida. On the date of the incident, Mr. Bebek was assisting with the unloading of

gypsum from one of the cargo holds of the M/V *Maple*.  The crane that crushed Mr. Bebek was located on the dock well below the deck of the M/V *Maple*.  The crane operator had no line of sight to the cargo hold and relied on a spotter or flagger (or spotter) standing on the deck of the ship to guide and direct the movement of the crane's bucket (also referred to as a claw or grab). As Bosun, one of the tasks assigned to Mr. Bebek was monitoring the distribution of the gypsum inside the cargo hold to make sure that the weight of the load remained evenly distributed.  Mr. Bebek was performing this task by looking over the side of the cargo hold when the crane operator lost control of the grab, lowered it outside of the cargo hold, and crushed Mr. Bebek between the grab and the ship's rail.

The M/V Maple is pictured below:



*Estate of Salih Bebek v. Sims Crane & Equipment Co., et. al.*
*Complaint for Wrongful Death*

The arrangement of the shoreside crane and the M/V Maple is pictured below:



The crane grab that crushed Mr. Bebek is pictured below:



*Estate of Salih Bebek v. Sims Crane & Equipment Co., et. al.*
*Complaint for Wrongful Death*

### The Parties

1. At all times material hereto, Plaintiff, FATMA BEBEK, is a resident of Istanbul, Turkey. FATMA BEBEK is the widow of the decedent, SALIH BEBEK (hereinafter the "decedent"), and is the putative personal representative of the Estate of the decedent and brings this action on behalf of the Estate and all other survivors and beneficiaries.

2. At all times material hereto, Defendant, SIMS CRANE & EQUIPMENT COMPANY, is a Florida corporation that maintains an office at 1291 N. Highway 301, Tampa, Florida 33619.

3. At all times material hereto, Defendant, JEFFERY MAY, is a resident of Saint Johns, Florida.

4. At all times material hereto, Defendant, PATRICK WILLIAM HARDIE, is a resident of Saint Johns, Florida.

5. At all times material hereto, Defendants, KEYSTONE TERMINAL HOLDINGS OF FLORIDA, LLC, KEYSTONE TERMINAL HOLDINGS, LLC, and KEYSTONE TERMINAL PROPERTIES, LLC are Florida corporations that maintain their principal places of business at 1915 Wigmore Street, Jacksonville, Florida 32206.

6. At all times material hereto, Defendant, LOGISTEC GULF COAST, LLC, is a Florida corporation that maintains its principal place of business at 2327 S. Dock Street, Palmetto, Florida 34221.

7. At all times material hereto, Defendant, MAPLE MARINE CO., is a foreign corporation located in the Marshall Islands.

8. At all times material hereto, Defendant, FIBER MARINE SHIP MANAGEMENT & TRADING CO., is a foreign corporation located in Istanbul, Turkey.

LIPCON, MARGULIES & WINKLEMAN, P.A.

9. At all times material hereto, Defendant, XYZ Employer(s), is/are included to represent the employer(s) of the decedent insofar as such entity has a different name than the named Defendants herein.

10. At all times material hereto, Defendant, XYZ Shipowner(s), is/are included to represent the shipowner(s) of the M/V *Maple* insofar as such entity has a different name than the named Defendants herein.

11. At all times material hereto, Defendant, XYZ Ship Operator(s), is/are included to represent the ship operator and/or manage of the M/V *Maple* insofar as such entity has a different name than the named Defendants herein.

## Jurisdiction and Venue

12. This matter falls under the Court's admiralty and maritime jurisdiction.

13. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

14. Defendants, at all times material hereto, personally or through an agent,

    a. Operated, conducted, engaged in or carried on a business ventures in this state and/or county or had an office or agency in this state and/or county;

    b. Were engaged in substantial business activity within this state and/or are registered as corporations doing business in the State of Florida;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

15. Defendants are subject to the jurisdiction of the Courts of this State.

16. The negligent or wrongful acts causing the Decedent's death all occurred within the state of Florida, and more particularly at the Keystone Terminal located at 1915 Wigmore Street, Jacksonville, Florida.

17. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104; the General Maritime Law of the United States; Florida Wrongful Death Act, Florida Statute §768.16, <u>et. seq.</u>, and any other applicable wrongful death or survival act.

<u>**General Allegations Common to All Counts**</u>

18. Decedent, SALIH BEBEK, was killed on January 2, 2022, at Keystone Terminal in Jacksonville, Florida.

19. Decedent, Salih Bebek, is survived by his wife, Fatma Bebek (54 years of age), his son, Olcay Bebek (28 years of age), and his daughter, Ozlem Nur Bebek (24 years of age). Prior to his death, Mr. Bebek provided support to his wife and children.

20. At all times material hereto, Defendant, SIMS CRANE & EQUIPMENT CO., was hired to assist in the unloading of material from Cargo Bay #4 of the M/V Maple.

21. At all times material hereto, Defendant, SIMS CRANE & EQUIPMENT CO. employed Defendant, JEFFERY MAY, as the subject flagger, spotter, or signalman.

22. At all times material hereto, Defendant, SIMS CRANE & EQUIPMENT CO. employed Defendant, PATRICK WILLIAM HARDIE, as the subject crane operator.

23. At all times material hereto, Defendants JEFFERY MAY and PATRICK WILLIAM HARDIE were acting in the course and scope of their employment.

24. At all times material hereto, Defendant, FIBER MARINE SHIP MANAGEMENT & TRADING CO., was Mr. Bebek's employer and owned, operated, managed, maintained and/or controlled the M/V *Maple*.

25. At all times material hereto, Mr. Bebek was carrying out his assigned duties and was in the service of the M/V *Maple*, which was a vessel in navigation located on a navigable waterway and carrying out a traditional commercial maritime activity.

26. At all times material hereto, Defendant, MAPLE MARINE CO., was the owner of the M/V *Maple*.

27. At all times material, Defendants, KEYSTONE TERMINAL HOLDINGS OF FLORIDA, LLC, KEYSTONE TERMINAL HOLDINGS, LLC, and KEYSTONE TERMINAL PROPERTIES, LLC, (collectively referred to as the KEYSTONE DEFENDANTS or KEYSTONE, herein), chartered, operated, and/or controlled the M/V *Maple,* was actively involved in the unloading of materials from the M/V *Maple,* and had entered contracts with other named and potential defendants related to the cargo and unloading of the M/V *Maple*.

28. At all times material, Defendant, LOGISTEC GULF COAST, LLC, provided stevedoring services to the M/V *Maple* and/or other parties, and provided the crane involved in the subject incident, the radios used by SIMS CRANE & EQUIPMENT CO. (and its employees), and provided operational supervision for the unloading of the M/V *Maple*.

29. At all times material, multiple contracts and/or written agreements existed between the various Defendants pertaining to the subject unloading of the M/V *Maple*, the M/V *Maple* and its crew, and the equipment and personnel used to unload the M/V *Maple*. Plaintiff reserves the right to amend this Complaint as those agreements become available through discovery and the precise relationships between the Defendants is revealed.

30. The M/V *Maple* arrived in Jacksonville, Florida on December 29, 2021.

31. On December 30, 2021, unloading or discharging operations began on Cargo Hold #4 using a shoreside crane.

32. The M/V *Maple* has three ship-mounted cranes, and Ship Crane #2 (pictured above) is located next to Cargo Hold #4.

33. The operator of Ship Crane #2 would have a clear line of sight to Cargo Hold #4 and the surrounding area, including the area where Mr. Bebek was killed.

34. Ship Crane #2 was not used in the unloading operation of Cargo Hold #4.

35. The unloading of Cargo Hold #4 with the shoreside crane continued through December 31, 2021, was suspended for January 1, 2022, and resumed at approximately 7:00 AM on January 2, 2022.

36. On January 2, 2022, the wind speeds reached approximately 20 mph prior to Mr. Bebek's death.

37. In the days prior to the subject incident, the crane's grab (sometimes referred to as a bucket or claw), was routinely lowered into Cargo Hold #4 roughly 8-10 feet from the side of the hold.

38. At the time of the subject incident, the crane operator, Defendant HARDIE, could not see onto the deck of the M/V Maple.  Defendant HARDIE relied on his spotter, Defendant MAY, to monitor the path of the crane's grab and advise when it was safe to move the grab in and out of Cargo Hold #4.

39. At the time of the incident, Defendant HARDIE lowered the crane's grab when the path was not clear.

40. At the time of the incident, Defendant MAY had a clear line of sight to the path of the crane's grab and to Mr. Bebek who was below the crane's grab and in its path, but he failed to warn Mr. Bebek or order Defendant HARDIE to stop before Mr. Bebek was crushed the grab.

41. Mr. Bebek died as a result of the injuries he sustained when he was struck by the crane's grab.

## COUNT I – GENERAL NEGLIGENCE AGAINST SIMS CRANE & EQUIPMENT CO.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

42. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO., owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of its business to prevent foreseeable injury.

43. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO. breached its duty to exercise reasonable care and was negligent in one or more of the following ways:

   a. Failing to provide its employees with proper and adequate means of communicating with each other and the crew of the M/V *Maple*;

   b. Failing to conduct a safety briefing or meeting prior to commencing the work of unloading the M/V *Maple*;

   c. Failing to properly supervise or monitor its employees;

   d. Failing to assign employees with proper and adequate experience to the task of unloading the M/V *Maple*;

   e. Failing to implement proper and adequate procedures to ensure the safe operation of the subject crane;

   f. Failure to provide adequate training, and instruction to its employees;

   g. Failing to provide proper and adequate video equipment to allow its crane operator to see the position of the crane grab at all times;

    h.   Failing to stop operating when the weather conditions deteriorated to the point that the subject crane could not be safely operated or adequately controlled;

    i.   Failing to implement adequate policies and procedures for the safe operation of the subject crane in adverse weather;

    j.   Operating in unsafe conditions;

    k.   Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

44. At all times material hereto, Defendants knew of the foregoing conditions causing Decedent's death and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

45. As a direct and proximate result of Defendants negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant, and or its agents, servants, and/or employees.

46. As a direct and proximate result of Defendants negligence, Decedent, SALIH BEBEK, suffered his untimely death. The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendants, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

### COUNT II – GENERAL NEGLIGENCE UNDER THE THEORY OF VICARIOUS LIABILITY AGAINST SIMS CRANE & EQUIPMENT CO.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

47. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO., was and is vicariously liable for the negligent acts and omissions of its employees, agents, and representatives per the doctrine of *respondeat superior*.

48. At all times material, Defendants, JEFFERY MAY and PATRICK WILLIAM HARDIE:

    a. Were employees of Defendant, SIMS CRANE & EQUIPMENT CO. (SIMS CRANE);

    b. Were acting within the course and scope of their employment with SIMS CRANE;

    c. Were the agents or representatives of SIMS CRANE;

    d. Were subject to the control or right of control by SIMS CRANE;

    e. Were paid by SIMS CRANE; and

    f. Were authorized by SIMS CRANE to act on its behalf.

49. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO., owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of its business to prevent foreseeable injury.

50. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO. breached its duty to exercise reasonable care and was negligent through the acts of its employees in one or more of the following ways:

a.  The failure of its Crane Operator, Defendant HARDIE, and Spotter, Defendant May, to properly and effectively communicate with one another;

b.  The failure of Defendants MAY and HARDIE to keep a proper lookout;

c.  The failure of Defendant MAY to advise Defendant HARDIE that the path beneath the crane grab was not clear and that it was not safe to lower the crane grab prior to crushing Decedent;

d.  Defendant MAY telling Defendant HARDIE it was safe to lower the crane grab and that the path was clear, when in fact it was not;

e.  The failure of Defendant HARDIE to properly control the crane grab;

f.  The failure of Defendant HARDIE to wait for the "all-clear" from Defendant May before lowering the crane grab;

g.  The failure of Defendant MAY to attend a safety meeting prior to beginning work on the day of the incident;

h.  The failure of Defendant MAY to warn Decedent that the crane grab was being lowered toward him and/or that Defendant HARDIE had lost control of the crane grab;

i.  Defendant HARDIE'S failure to stop the crane grab immediately when told to do so by Defendant MAY;

j.  Defendant HARDIE'S failure to properly position the crane grab as he attempted to lower it into the cargo hold;

k.  Defendant May's failure to tell Defendant HARDIE to stop lowering the crane grab when it deviated from its normal and intended path to the cargo hold;

l.   The failure of MAY or HARDIE to cordon off areas of the ship that were potentially in the path of the crane or its grab.

51. At all times material hereto, Defendant, SIMS CRANE, was and is liable for the direct acts of negligence of its employees, Defendants HARDIE and MAY.

52. As a direct and proximate result of Defendants negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant, and or its agents, servants, and/or employees.

53. As a direct and proximate result of Defendants negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendants, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT III – NEGLIGENCE AGAINST JEFFERY MAY

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

54. At all times material, Defendant, JEFFERY MAY (MAY), owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of his work to prevent foreseeable injury.

55. At all times material, Defendant, SIMS CRANE & EQUIPMENT CO. breached its duty to exercise reasonable care and was negligent in one or more of the following ways:

    a.  Failing to properly and effectively communicate with Defendant HARDIE and the crew of the M/V *Maple*;

    b.  Failing to keep a proper lookout;

    c.  Failing to follow company guidelines and protocols;

    d.  Failing to follow industry standards for the safe execution of his duties;

    e.  Failing to advise Defendant HARDIE that the path beneath the crane grab was not clear and that it was not safe to lower the crane grab prior to crushing Decedent;

    f.  Telling Defendant HARDIE that it was safe to lower the crane grab and that the path was clear, when in fact it was not;

    g.  Failing to advise Defendant HARDIE that he (HARDIE) had lost control the crane grab;

    h.  Failing to attend a safety meeting prior to beginning work on the day of the incident;

    i.  Failing to warn Decedent that the crane grab was being lowered toward him and/or that Defendant HARDIE had lost control of the crane grab;

    j.  Failing to call for the end of operations after observing the crane bucket swing out of control prior to the subject incident;

    k.  Failing to cease operations and create a new plan or procedure after observing the crane grab strike the side of the vessel prior to the subject incident;

    l.  Failing to tell Defendant HARDIE to stop lowering the crane grab when it deviated from its normal and intended path to the cargo hold;

m.  Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

56. As a direct and proximate result of Defendant's negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant,.

57. As a direct and proximate result of Defendant's negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT IV – NEGLIGENCE AGAINST PATRICK WILLIAM HARDIE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

58. At all times material, Defendant, PATRICK WILLIAM HARDIE (HARDIE), owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of his work to prevent foreseeable injury.

59. At all times material, Defendant HARDIE breached his duty to exercise reasonable care and was negligent in one or more of the following ways:

a.  Failing to properly and effectively communicate with Defendant MAY and he crew of the M/V *Maple*:

b.  Failing to safely operate the subject crane by lowering the crane grab onto the deck of the M/V *Maple*;

c.  Failing to keep a proper lookout;

d.  Failing to properly control the crane grab;

e.  Failing to wait for the "all-clear" from Defendant MAY before lowering the crane grab;

f.  Failing to stop lowering the crane grab immediately when told to do so by Defendant MAY;

g.  Failing to properly position the crane grab as he attempted to lower it into the cargo hold;

h.  Failing to stop operations when it became too windy to safely control the crane and crane grab;

i.  Listening to the radio in the cab of the crane at a volume that prevented him from hearing Defendant MAY's instructions and warnings;

j.  Failing to follow company policies and procedures;

k.  Failing to follow industry standards;

l.  Failing to call for the end of operations after observing the crane bucket swing out of control prior to the subject incident;

m.  Failing to cease operations and create a new plan or procedure after striking the side of the vessel prior to the subject incident;

n.  Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

60. As a direct and proximate result of Defendant's negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant,.

61. As a direct and proximate result of Defendant's negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT V – NEGLIGENT HIRING OR RETENTION AGAINST THE KEYSTONE DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

62. At all times material, THE KEYSTONE DEFENDANTS owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of its work and operations to prevent foreseeable injury.

63. At all times material, THE KEYSTONE DEFENDANTS, chartered, operated, controlled, and/or were the *pro hac vice* owners of the M/V *Maple*.

64. At all times material, THE KEYSTONE DEFENDANTS owned some or all of the cargo aboard the M/V *Maple*.

65. At all times material, THE KEYSTONE DEFENDANTS hired SIMS CRANE & EQUIPMENT CO. to unload cargo from the M/V *Maple*.

66. At all times material, THE KEYSTONE DEFENDANTS breached their duty to exercise reasonable care and was negligent in one or more of the following ways:

   a. Employing a shoreside crane to offload cargo when a safer ship-based crane was available;

   b. Hiring SIMS CRANE & EQUIPMENT CO. to operate a shoreside crane to offload cargo from the M/V Maple despite knowing that the SIMS CRANE & EQUIPMENT CO.'s employees had limited experience unloading such cargo ships;

   c. Failing to retain properly experienced stevedores to operate the ship-based crane to unload the subject cargo;

   d. Failing to adequately investigate the experience of the SIMS CRANE & EQUIPMENT CO. employees retained to unload the subject cargo;

67. As a direct and proximate result of Defendants' negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant,

68. As a direct and proximate result of Defendants' negligence, Decedent, SALIH BEBEK, suffered his untimely death. The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life

expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of

support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law

against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial

by jury of all issues so triable.

## COUNT VI – GENERAL NEGLIGENCE AGAINST THE KEYSTONE DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one

(41) as though they were originally alleged herein.

69. At all times material, THE KEYSTONE DEFENDANTS owed a duty to the public, and

to the Decedent in particular, to exercise reasonable care in the operation, supervision,

and management of its work and operations to prevent foreseeable injury.

70. At all times material, THE KEYSTONE DEFENDANTS, chartered, operated, controlled,

and/or were the *pro hac vice* owners of the M/V *Maple*.

71. At all times material, THE KEYSTONE DEFENDANTS owned some or all of the cargo

aboard the M/V *Maple*.

72. At all times material, THE KEYSTONE DEFENDANTS hired SIMS CRANE &

EQUIPMENT CO. to unload cargo from the M/V *Maple*.

73. At all times material, THE KEYSTONE DEFENDANTS breached its duty to exercise

reasonable care and was negligent in one or more of the following ways:

  a. Failing to properly supervise or monitor SIMS CRANE & EQUIPMENT CO.'s

  unloading operations;

  b. Failing to use the ship-based crane to unload cargo from the M/V *Maple*;

1 9

L I P C O N ,  M A R G U L I E S  &  W I N K L E M A N ,  P . A .

c.   Failing to employ properly trained and experienced stevedores to unload the M/V *Maple*;

d.   Failing to stop unloading after it became too windy to do so safely;

e.   Failing to stop unloading after becoming aware that the crane grab had struck the side of the cargo hold prior to the subject incident;

f.   Failing to ensure that a sufficient number of SIMS CRANE & EQUIPMENT CO. employees was assigned to the unloading operation;

g.   Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

74. As a direct and proximate result of Defendants' negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant,

75. As a direct and proximate result of Defendants' negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT VII – UNSEAWORTHINESS AGAINST THE KEYSTONE DEFENDANTS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

76. At all times material, THE KEYSTONE DEFENDANTS, chartered, operated, controlled, and/or were the *pro hac vice* owners of the M/V *Maple*.

77. At all times material, THE KEYSTONE DEFENDANTS owed an absolute and non-delegable duty to Decedent to provide a seaworthy vessel.

78. At all times material, THE KEYSTONE DEFENDANTS breached its duty to provide a seaworthy vessel and caused the Decedent's death in one or more of the following ways:

   a. Failing to provide adequate means of communication between the ship's crew, including Decedent, and the SIMS CRANE & EQUIPMENT CO. employees who were unloading the subject cargo;

   b. Failing to ensure the people operating the subject crane had adequate training and experience to safely perform the task,

   c. Failing to have adequate safety measures in place;

   d. Failing to have a sufficient number of crew to allow for safe unloading the vessel;

   e. Failing to have a sufficiently trained crew to allow for the safe unloading of cargo;

   f. Failing to supervise or monitor the unloading of the vessel;

   g. Failing to provide a reasonably safe place to work;

   h. Failing to use the shipboard crane to unload cargo;

   i. Failing to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Decedent, while engaged in the course of his employment on the vessel;

      j.   Failing to follow sound management practices with the goal of providing the Decedent a safe place to work;

      k.   Failing to investigate the hazards to crew members and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Decedent of the danger from the hazard;

      l.   Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

79. The injuries suffered by the Decedent, are the result of and were caused directly by the unseaworthiness of the vessel, and its crew, and the Defendants are liable for his injuries and untimely death resulting from the breach of the warranty of seaworthiness.

80. As a direct and proximate result of unseaworthiness of the vessel, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that Decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## <u>COUNT VIII – WRONGFUL DEATH (GENERAL MARITIME LAW) NEGLIGENCE AGAINST FIBER MARINE SHIP MANAGEMENT AND TRADING CO.</u>

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

2 2

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

81. At all times material, FIBER MARINE SHIP MANAGEMENT AND TRADING CO. (FIBER MARINE), owned, operated, controlled, charted, and/or was the *pro hac vice* owner of the M/V *Maple*.

82. At all times material, FIBER MARINE employed Decedent as a Bosun aboard the M/V *Maple*.

83. At all times material, under the general maritime law, it was the duty of FIBER MARINE to provide Decedent with a reasonably safe place to work.

84. FIBER MARINE breached its duty to Decedent and failed to provide a reasonably safe place to work in one or more of the following ways:

    a. Failing to use reasonable care to provide Decedent a reasonably safe place to work;

    b. Failing to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the Decedent, while engaged in the course of his employment aboard the M/V *Maple*;

    c. Failing to maintain the M/V *Maple* in a reasonably safe condition;

    d. Failing to inspect the M/V *Maple* for hazardous conditions;

    e. Failing to warn the Decedent of conditions aboard the M/V *Maple* which it knew or should have known to be unreasonably dangerous or present a risk of harm;

    f. Failing to man the M/V *Maple* with sufficient crew;

    g. Failing to provide adequate instruction, training and supervision to the Decedent and other crew;

    h. Failing to provide Decedent reasonable hours of employment so as to not overwork him to the point of not being physically fit to carry out his assigned duties in a reasonably safe manner and to the point of fatigue;

i.  Failing to ascertain the cause of prior similar accidents and incidents so as to take measures to prevent their recurrence, and more particularly the Decedent's accident;

j.  Failing to follow sound management practices with the goal of providing the Decedent with a reasonably safe place to work;

k.  Prior to the Decedent's incident, Defendant failed to investigate the hazards to the Decedent and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Decedent of the danger the hazard posed;

l.  Failing to take all reasonable precautions to prevent the incident, injuries, and death of the Decedent.

m.  Failing to properly supervise or monitor SIMS CRANE & EQUIPMENT CO.'s unloading operations;

n.  Failing to use the ship-based crane to unload cargo from the M/V *Maple*;

o.  Failing to employ properly trained and experienced stevedores to unload the M/V *Maple*;

p.  Failing to stop unloading after it became too windy to do so safely;

q.  Failing to stop unloading after becoming aware that the crane grab had struck the side of the cargo hold prior to the subject incident;

r.  Failing to ensure that a sufficient number of SIMS CRANE & EQUIPMENT CO. employees was assigned to the unloading operation;

s.  Failing to provide adequate means of communication between the ship's crew, including Decedent, and the SIMS CRANE & EQUIPMENT CO. employees who were unloading the subject cargo;

    t.  Failing to ensure the people operating the subject crane had adequate training and experience to safely perform the task,

    u.  Failing to supervise or monitor the unloading of the vessel;

    v.  Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

85. Defendant knew of the foregoing conditions causing the Decedent's death and did not correct them, or the conditions existed for a sufficient length of time so that the Defendant in the exercise of reasonable care should have learned of them and corrected them.

86. The injuries suffered by the Decedent, are the result of and were caused directly by the Defendant's negligence, and the Defendant is liable for his injuries and untimely death resulting from that negligence.

87. As a direct and proximate result Defendant's negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that Decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## <u>COUNT IX – JONES ACT NEGLIGENCE AGAINST FIBER MARINE SHIP MANAGEMENT AND TRADING CO.</u>

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

88. At all times material, FIBER MARINE SHIP MANAGEMENT AND TRADING CO. (FIBER MARINE), owned, operated, controlled, charted, and/or was the *pro hac vice* owner of the M/V *Maple*.

89. At all times material, FIBER MARINE employed Decedent as a Bosun aboard the M/V *Maple*.

90. At all times material, it was the duty of FIBER MARINE to provide Decedent with a reasonably safe place to work.

91. FIBER MARINE breached its duty to Decedent and failed to provide a reasonably safe place to work in one or more of the following ways:

　　a.　Failing to use reasonable care to provide Decedent a reasonably safe place to work;

　　b.　Failing to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the Decedent, while engaged in the course of his employment aboard the M/V *Maple*;

　　c.　Failing to maintain the M/V *Maple* in a reasonably safe condition;

　　d.　Failing to inspect the M/V *Maple* for hazardous conditions;

　　e.　Failing to warn the Decedent of conditions aboard the M/V *Maple* which it knew or should have known to be unreasonably dangerous or present a risk of harm;

　　f.　Failing to man the M/V *Maple* with sufficient crew;

　　g.　Failing to provide adequate instruction, training and supervision to the Decedent and other crew;

LIPCON, MARGULIES & WINKLEMAN, P.A.

h.  Failing to provide Decedent reasonable hours of employment so as to not overwork him to the point of not being physically fit to carry out his assigned duties in a reasonably safe manner and to the point of fatigue;

i.  Failing to ascertain the cause of prior similar accidents and incidents so as to take measures to prevent their recurrence, and more particularly the Decedent's accident;

j.  Failing to follow sound management practices with the goal of providing the Decedent with a reasonably safe place to work;

k.  Prior to the Decedent's incident, Defendant failed to investigate the hazards to the Decedent and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Decedent of the danger the hazard posed;

l.  Failing to take all reasonable precautions to prevent the incident, injuries, and death of the Decedent.

m.  Failing to properly supervise or monitor SIMS CRANE & EQUIPMENT CO.'s unloading operations;

n.  Failing to use the ship-based crane to unload cargo from the M/V *Maple*;

o.  Failing to employ properly trained and experienced stevedores to unload the M/V *Maple*;

p.  Failing to stop unloading after it became too windy to do so safely;

q.  Failing to stop unloading after becoming aware that the crane grab had struck the side of the cargo hold prior to the subject incident;

r.  Failing to ensure that a sufficient number of SIMS CRANE & EQUIPMENT CO. employees was assigned to the unloading operation;

2 7

L I P C O N ,  M A R G U L I E S  &  W I N K L E M A N ,  P . A .

s.  Failing to provide adequate means of communication between the ship's crew, including Decedent, and the SIMS CRANE & EQUIPMENT CO. employees who were unloading the subject cargo;

t.  Failing to ensure the people operating the subject crane had adequate training and experience to safely perform the task,

u.  Failing to supervise or monitor the unloading of the vessel;

v.  Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

92. Defendant knew of the foregoing conditions causing the Decedent's death and did not correct them, or the conditions existed for a sufficient length of time so that the Defendant in the exercise of reasonable care should have learned of them and corrected them.

93. The injuries suffered by the Decedent, are the result of and were caused directly by the Defendant's negligence, and the Defendant is liable for his injuries and untimely death resulting from that negligence.

94. As a direct and proximate result Defendant's negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that Decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT X – UNSEAWORTHINESS AGAINST FIBER MARINE SHIP MANAGEMENT AND TRADING CO.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

95. At all times material, FIBER MARINE SHIP MANAGEMENT AND TRADING CO. (FIBER MARINE), owned, operated, controlled, chattered, and/or was the *pro hac vice* owners of the M/V *Maple*.

96. At all times material, FIBER MARINE owed an absolute and non-delegable duty to Decedent to provide a seaworthy vessel.

97. At all times material, FIBER MARINE breached its duty to provide a seaworthy vessel and caused the Decedent's death in one or more of the following ways:

   a. Failing to provide adequate means of communication between the ship's crew, including Decedent, and the SIMS CRANE & EQUIPMENT CO. employees who were unloading the subject cargo;

   b. Failing to ensure the people operating the subject crane had adequate training and experience to safely perform the task,

   c. Failing to have adequate safety measures in place;

   d. Failing to have a sufficient number of crew to allow for safe unloading the vessel;

   e. Failing to have a sufficiently trained crew to allow for the safe unloading of cargo;

   f. Failing to supervise or monitor the unloading of the vessel;

   g. Failing to provide a reasonably safe place to work;

LIPCON, MARGULIES & WINKLEMAN, P.A.

   h.   Failing to use the shipboard crane to unload cargo;

   i.   Failing to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Decedent, while engaged in the course of his employment on the vessel;

   j.   Failing to follow sound management practices with the goal of providing the Decedent a safe place to work;

   k.   Failing to investigate the hazards to crew members and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Decedent of the danger from the hazard;

   l.   Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

98. The injuries suffered by the Decedent, are the result of and were caused directly by the unseaworthiness of the vessel, and its crew, and the Defendant is liable for his injuries and untimely death resulting from the breach of the warranty of seaworthiness.

99. As a direct and proximate result of unseaworthiness of the vessel, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that Decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

### COUNT XI – UNSEAWORTHINESS AGAINST MAPLE MARINE CO.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

100. At all times material, MAPLE MARINE CO. (MAPLE MARINE), owned, operated, controlled, chattered, and/or was the *pro hac vice* owners of the M/V *Maple*.

101. At all times material, MAPLE MARINE owed an absolute and non-delegable duty to Decedent to provide a seaworthy vessel.

102. At all times material, MAPLE MARINE breached its duty to provide a seaworthy vessel and caused the Decedent's death in one or more of the following ways:

    a.  Failing to provide adequate means of communication between the ship's crew, including Decedent, and the SIMS CRANE & EQUIPMENT CO. employees who were unloading the subject cargo;

    b.  Failing to ensure the people operating the subject crane had adequate training and experience to safely perform the task,

    c.  Failing to have adequate safety measures in place;

    d.  Failing to have a sufficient number of crew to allow for safe unloading the vessel;

    e.  Failing to have a sufficiently trained crew to allow for the safe unloading of cargo;

    f.  Failing to supervise or monitor the unloading of the vessel;

    g.  Failing to provide a reasonably safe place to work;

    h.  Failing to use the shipboard crane to unload cargo;

    i.  Failing to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Decedent, while engaged in the course of his employment on the vessel;

31

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

j.    Failing to follow sound management practices with the goal of providing the Decedent a safe place to work;

k.    Failing to investigate the hazards to crew members and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Decedent of the danger from the hazard:

l.    Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

103.    The injuries suffered by the Decedent, are the result of and were caused directly by the unseaworthiness of the vessel, and its crew, and the Defendant is liable for his injuries and untimely death resulting from the breach of the warranty of seaworthiness.

104.    As a direct and proximate result of unseaworthiness of the vessel, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are entitled to all damages allowed by applicable law, including but not limited to the loss of the net accumulations that Decedent would have obtained had he lived to his normal life expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law against Defendant, plus costs, interest, any other relief this Court deems just and proper, and trial by jury of all issues so triable.

## COUNT XII – GENERAL NEGLIGENCE AGAINST LOGISTEC GULF COAST, LLC

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through forty-one (41) as though they were originally alleged herein.

105.    At all times material, Defendant, LOGISTEC GULF COAST, LLC (LOGISTEC), owed a duty to the public, and to the Decedent in particular, to exercise reasonable care in the operation, supervision, and management of its business to prevent foreseeable injury.

106.    LOGISTEC was retained to provide the subject crane and radios and to supervise the unloading of the M/V *Maple*.

107.    In addition to its general duty of reasonable care in its operations, LOGISTEC had a duty to exercise reasonable care in supervising the unloading of the M/V *Maple*.

108.    At all times material, Defendant, LOGISTEC breached its duty to exercise reasonable care and was negligent in one or more of the following ways:

a.  Failing to provide its employees, including all those who were assisting in the unloading of the vessel, with proper and adequate means of communicating with each other and the crew of the M/V *Maple*;

b.  Failing to conduct a safety briefing or meeting prior to commencing the work of unloading the M/V *Maple*;

c.  Failing to properly supervise or monitor the unloading process;

d.  Failing to properly monitor weather conditions;

e.  Failing to implement proper and adequate procedures to ensure the safe supervision and operation of the subject crane;

f.  Failure to provide adequate training, and instruction to its employees;

g.  Failing to provide proper and adequate video equipment to allow its crane operator to see the position of the crane grab at all times;

h.  Failing to provide proper and adequate equipment for unloading the M/V *Maple*;

i.   Failing to stop operating when the weather conditions deteriorated to the point that the subject crane could not be safely operated or adequately controlled;

j.   Failing to implement adequate policies and procedures for the safe operation of the subject crane in adverse weather;

k.   Operating in unsafe conditions;

l.   Failing to observe that the crane operator had lost control of the subject grab such that it struck the side of the vessel on at least one occasion prior to the subject incident;

m.   Having observed that the crane operator had lost control of the subject grab such that it struck the side of the vessel on at least one occasion prior to the subject incident, failing to stop the unloading operation;

n.   Failing to cordon off areas of the ship that were potentially in the path of the crane or its grab.

109.   At all times material hereto, Defendant knew of the foregoing conditions causing Decedent's death and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

110.   As a direct and proximate result of Defendant's negligence, decedent suffered severe personal injuries, pre-death pain and suffering, and ultimately died due to the fault, wrongful acts, and negligence of the Defendant, and or its agents, servants, and/or employees.

111.   As a direct and proximate result of Defendants negligence, Decedent, SALIH BEBEK, suffered his untimely death.  The Estate of SALIH BEBEK and its survivors are

entitled to all damages allowed by applicable law, including but not limited to the loss of

the net accumulations that decedent would have obtained had he lived to his normal life

expectancy, as well as the cost of his funeral expenses; mental pain and suffering, loss of

support and services, loss of parental companionship, instruction, nurture and guidance.

**WHEREFORE,** Plaintiff demands judgment for all damages recoverable under the law

against Defendants, plus costs, interest, any other relief this Court deems just and proper, and

trial by jury of all issues so triable.

*Respectfully submitted,*

LIPCON, MARGULIES
& WINKLEMAN, P.A.
Attorneys for Plaintiff
One Biscayne Tower, Suite 1776
Miami, Florida 33131
Telephone: (305) 373 – 3016
Facsimile:  (305) 373 – 6204
E-mail: gprobst@lipcon.com
E-mail: jmargulieslipcon.com

By:   */s/Jason Margulies*
      **JASON MARGULIES**
      Florida Bar No. 57916
      **GEOFFREY E. PROBST**
      Florida Bar No. 505498